■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SUKELE LEWIS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Moskowitz, J.), rendered March 24, 1988, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress the defendant's pretrial oral and videotaped statements made to the police.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. The facts have been considered and are determined to have been established.

The defendant, who was 16 years old at the time, was one of five persons who were charged with and separately tried for the attempted robbery and felony murder of Ruben Concepcion on New Year's Day of 1987. The sole evidence linking the defendant to the crime was his oral and videotaped statements made to the police several hours after the police investigation into the incident began. At the *Huntley* hearing and at the trial, the defendant disavowed the statements, claiming that they were involuntarily made as a result of improper police conduct. The hearing court found that no improper police procedures were involved, that the defendant and his codefendants went with the police voluntarily, and that they were not in custody until they made incriminatory statements. Those statements were made after *Miranda* warnings were issued by the police and by the Assistant District Attorney who conducted the videotaped interview. The court further found that the defendant and each of the codefendants who made statements knowingly and intelligently waived their rights.

Two trial errors served to deprive the defendant of a fair trial. The trial court failed to "respond meaningfully to the

jury's request for further instruction" with respect to the meaning of "coercion" *(People v Malloy,* 55 NY2d 296, 302; *People v Almodovar,* 62 NY2d 126). Significantly, the word, for which the jury requested a definition, was not used in the trial court's main charge and could only have made sense within the context of the charge on voluntariness of the defendant's statements. It was therefore incumbent on the trial court to ask, at the least, for clarification of the jury's request. Instead, in response to the jury's request, the court read only the part of the definition of "coercion" found in Black's Law Dictionary, which states that the word means "Compulsion; constraint [or] compelling by force or arms" (Black's Law Dictionary 234 [5th ed 1979]). The court denied the defendant's request that it include the rest of the definition, which explained that coercion need not be physical force. Thus, the jury could fairly have been left with the incorrect impression that unless the police had physically beaten the defendant or pointed a gun at the defendant, they must find the statements voluntary. "It is a fundamental rule of law that jury instructions are required to be responsive to the issues presented by the evidence" *(People v Jones,* 74 AD2d 854, 856). It is significant that the defendant did not claim that the police used force or arms to compel the statement but rather, used mental constraint and deception. Thus, the court's response to the jury's request could not be considered "meaningful" within the circumstances.

With respect to the defendant's contention that the court should have charged the affirmative defense to felony murder, we find that a reasonable view of the evidence, viewed in the light most favorable to the defendant, supports the defendant's request for such a charge *(see,* Penal Law § 125.25 [3]; *People v Alston,* 104 AD2d 653). The defendant testified that he did not commit the stabbing which resulted in Concepcion's death, nor did he solicit, request, command, importune, cause, or aid the stabbing in any way. The defendant further testified that he was not armed with any deadly weapon or any instrument, article, or substance readily capable of causing death or serious physical injury, nor did he have a reasonable ground to believe that any other participant was so armed or intended to engage in conduct likely to result in death or serious physical injury. Thus, the court committed reversible error in not giving the charge to the jury.

We note that while the hearing court did unduly restrict the scope of the defense counsel's examination and cross-examination of witnesses, it cannot be said that, in the circum-

stances, the effect was of significance to the outcome of the hearing. Further, contrary to the defendant's contention, we agree with the hearing court that the police were not guilty of any "calculated strategy" or "misconduct seemingly planned and deliberate" or "conscious scheme" to isolate the defendant from his parents (see, People v Bevilacqua, 45 NY2d 508, 514; People v Townsend, 33 NY2d 37; People v Kern, 149 AD2d 187, 218), and, in the circumstances, the police conduct did not approach the sort of parental deprivation that has served as grounds to suppress the pretrial statements of minors (see, People v Bevilacqua, supra; People v Townsend, supra, at 42). Once the defendant made his first oral statement after knowingly and voluntarily waiving his rights, probable cause existed for his arrest. We further find no basis in the record to disturb the hearing court's finding that the police did not make any deceptive offer to the defendant (see, People v Oates, 104 AD2d 907, 910; People v Armstead, 98 AD2d 726). The defendant's contention relating to the failure to inform him that he was under arrest has not been preserved for appellate review (see, CPL 470.05 [2]).

In light of our determination, it is unnecessary to consider the defendant's remaining contentions. Sullivan, J. P., Harwood, Balletta and Rosenblatt, JJ., concur.